# WILLIAM COLBURN
## v.
# C. M. WESCOTT.

*Contracts—Performance—Evidence.*

In an action· on a contract for sinking a well, in which plaintiff agreed that the well should furnish sufficient water to admit of steady pumping, and should be fitted complete with pump, which defendant claimed was not done, this court declines to interfere with a verdict for plaintiff.

[Opinion filed May 28, 1890.]

APPEAL from the Circuit Court of Woodford County; the Hon. S. S. PAGE, Judge, presiding.

Messrs. EDWARDS & EVANS, for appellant.

Mr. W. L. ELLWOOD, for appellee.

LACEY, J. This suit was brought by appellee on the following contract, to wit:

"Entered into this day, Sept. 2, 1887, wherein in consideration of one dollar and fifty cents per foot (counting from top of pump to bottom of screen), C. M. Wescott is to furnish Wm. Colburn a two-inch tubular well, fitted complete, said well to furnish sufficient water to admit of steady pumping, work to be completed as soon as possible; Wm. Colburn is to furnish sufficient water to operate drills, also one horse and power, and board men. If cylinder will work and is wanted, it will be furnished in place of valves. If valves, head and cylinder are not wanted, a reduction of seventy-five cents per foot will be made, in not to exceed thirty feet of said well." The above contract was signed by both parties. The declaration alleged performance of said contract on the part of the said appellee, in that in October, 1887, he bored and fur nished complete, with pump and galvanized pipe, a two-inch

tubular well, one hundred and eighty-two feet from the top of the pump to the bottom of the screen, and averred that the well furnished sufficient water to admit of steady pumping, whereby the defendant became liable, etc. On the trial of the case the jury returned a verdict against the appellant and assessed appellee's damages at $270. A motion for a new trial being overruled, the appellant brings the case to this court by appeal.

The only cause assigned for error is, that the verdict was against the weight of the evidence. The point insisted on for reversal is that the evidence fails to show one of two important facts: First, either the well was not furnished with sufficient water to admit of steady pumping, or he did not furnish him with such well, fitted complete with pump. It is strenuously and particularly insisted by counsel for appellant that there was not sufficient water to admit of steady pumping. The evidence on this point is somewhat conflicting. The appellee testified that after he had got the well down about 182 feet he struck a vein of sand water and that upon taking the drill up the water immediately rose to within 55 or 56 feet of the top of the well, while prior to this they had no water at all.

In sinking, they had a two-inch hole, inside of which they had a smaller tube, an inch in the clear; inside of that they had valves; when they struck water they worked a tool rod to clean it out. In that manner they can tell whether they have plenty of water or not. They shut off the water and then they can exhaust any supply, unless unlimited. After they struck water they pumped two days. When they first struck water they began to pump and threw an inch stream from the tube rod. They pumped with the tube rod that day, except at intervals, and also the next. It was operated by horse power. The second day they pumped an inch stream clear toward the last. They measured frequently and never found the water lower than 55 or 60 feet. Then they attached the pump and pipe proper except the pump head; at first it did not throw as large a stream as it did afterward on account of the cleaning up. After it was cleaned up it threw, ap-

Colburn v. Wescott.

pellant judges, about half an inch of clean water, according to his timing, one and a half gallons per minute. According to a catalogue shown appellant before putting down the pump, issued by the parties who manufactured the pump, it listed for a two-inch cylinder one and a half gallons per minute. They made quite a number of tests after the pump was in shape. Appellant's father was present, also Burger, the man appellee had helping him do the work, and neither held a watch when it threw less than a gallon and a half per minute. It filled a bucket holding about three gallons in about three minutes. This test was made without the head of the pump being on, but the same valves were used from the beginning. No tests were made while Colburn's father was present. After the test was made, Colburn said he wanted a larger stream than that. The appellee never heard any other objection from him than that. When they went back to put the new pump head on they found the well in bad condition. It would not pump. They found the water in the well as they had left it.

They raised the valve of the pump and put on new leathers and new head. It worked nicely then. It threw an inch stream then. The appellee does not think a two-inch tubular well will throw to exceed a half-inch stream. After the windmill head had come, they fixed the valves and put on the head and told Colburn, at noon, that they were ready to try the pump and well and turn it over to him, and he said he had no time and went to the field. Appellee finally went into the field after Colburn and got him to come in, and when he saw the well, appellee told him he was ready to turn it over to him and he said he would not accept it. Then appellee went home. Appellee was substantially corroborated by his hired man, Burger, and partially by Samuel Bilinger and Peter Roman. The appellee then produced the witness, Henry Ludwig, who examined the well in April, 1889, and took out the pipes and one-third of the way down they found water; the leather had been cut by the sand, and they put a new leather on the valves; could work it then but could raise no water.

"The only reason that I know why I could raise no water

was, something had got under the check and held it up so it would not hold water. This check is about two feet below the valve. If the check was kept open, the water would go down. Could not tell whether there was much water at the bottom of the well or not, as the pump was not used so we could tell how it would turn out." "I did not tell appellant the reason I could not get the water out, though he asked me." "I could not tell whether there was any water in the well or merely a pocket." "I think I raised water but the check valve failed to hold it."

On the part of appellant, he produced himself as a witness, who testified, he saw them using the horse power and it threw but little water, about one-fourth of an inch stream, coming in spurts, with a good deal of air and bubbles; watched them between three-quarters and half an hour. He tried the well after they left and there was no water scarcely. After appellee came back to put a new pump head on he came from the field to see the tests. They gave a few strokes and appellant a few, to the pump. It dribbled a little but did not make a stream of any size at all. It raised a very little water that evening by spurts; there was no stream, just dribbled a little and bubbles and air. There was no water to amount to anything. He tried the pump again next spring. He could not get any water at all; had tried it several times off and on but could get none. Never undertook to take the pump and valves before Ludwig. Since then, Bishop has taken it out and examined it. They found it in good shape. At time appellee and Burger were present it took twelve to thirteen minutes to get a wooden pail full of water.

The appellant was corroborated by his father, Richard Colburn.

John Marble, who is acquainted with suction pumps, tried the well about four weeks after appellee quit but could get no water; was of the opinion that there was no water. Lafayette Russell tried it next spring and could get no water. Harry Bishop, a well-digger and borer, tried the pump about a year ago and could not get anything out of it. Took out the upper valve but not the lower. He then filled the pump

Colburn v. Wescott.

to the top. The water did not run away; the lower valve
was shut all right. "I tried to pump at that time and could
get no water." Put down the valve and tried it again and
could not get water. It had a good suction; if there had
been any water at bottom it surely must have pumped. Wit-
ness has had experience in water stratas. A water pocket is a
hole filled with water from the size of a spittoon to the size of
a house. There was somewhere about 60 feet in the pipe
when we examined it last. The water stood 65 feet to
the top of the ground before witness filled up the pipe.
Jacob Cheever tried the well the same evening they claimed
to have struck water and it took him half an hour to get a
half bucket of water. He tried afterward to get water for
the hogs but could not; could not get any the next day after
they claimed to have struck water. Witness worked for ap-
pellant at the time. This was about the substance of all the
testimony. Some other witnesses were introduced on the
part of appellee, but they are not of great importance. The
appellant's counsel insists that the evidence clearly shows
that there was no supply of water; that it must have been a
small pocket that the appellee struck, that became exhausted
in a very short time, and hence the contract made by the ap-
pellee was not fulfilled; or, if this was not so, the pump was
not in running order when appellee tendered the well to ap-
pellant.

As to the first point, we think that there was evidence from
which the jury might reasonably find that there was plenty
of water in the well, as, without question, the water raised to
within 55 or 56 feet of the top, in the neighborhood of which
it always stood, though appellant's counsel claims that it
might have been held up in the pipe. The jury, however,
has found differently, and we think they were justified in so
doing. We think that the jury were also at liberty to find
from the evidence that the pump was in good order and
pumping water in quantities required by the contract at the
time it was tendered to appellant and turned over to him by
the appellee. "The evidence, it is true, is conflicting on this
point, but the jury are the judges as to the weight of the evi-

dence. If the appellee and his witnesses are believed, then the well was furnishing sufficient water to admit of steady pumping, and that in quantities which such wells of that size could produce.

It is very seldom that this court will interfere to set aside the verdict of a jury where the evidence is conflicting, as it is here. It has the right to judge as to the credibility of witnesses and to determine the weight to be given to circumstances, and, unless there appears to be a manifest lack of judgment, the verdict is final.

We think, in this case, especially, as this is the second verdict found in favor of appellee, the verdict should not be disturbed. There is no other cause assigned for error, and as we overrule appellant's point as to the want of evidence, the judgment must be affirmed.

*Judgment affirmed.*